# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ─────────────────────────── | ) | |
| NATIONAL PARKS CONSERVATION | ) | |
| ASSOCIATION, *et al.*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 11-1548 (ABJ) |
|  | ) | |
| U.S. ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |
| ─────────────────────────── | ) | |

## ORDER

The Clean Air Act ("the CAA" or "the Act"), 42 U.S.C. §§ 7401 *et seq.*, regulates air emissions from stationary and mobile sources.  Section 7491 of the Act is aimed toward "the prevention of any future, and the remedying of any existing, impairment of visibility" which "results from manmade air pollution" in large parks and wilderness areas across the country. 42 U.S.C. § 7410(a)(1).  To achieve this goal, EPA is required to oversee the states' efforts to reduce pollution and haze in the skies above national parks and other wilderness areas.  *See id.*

As this Court has explained on multiple occasions in this case, *see* Order (Mar. 25, 2022) [Dkt. # 147] at 1–2 ("Mar. 2022 Order"); Order (Aug. 31, 2017) [Dkt. # 96] at 1–3, under the terms of the Act, each state is required to develop a state implementation plan, or "SIP," containing "emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress toward the national goal," and submit it to EPA for review. 42 U.S.C. § 7491(b)(2).  SIPs must include two components:  (1) a requirement that most major

stationary sources "procure, install, and operate" the best available retrofit technology ("BART"),[1] 42 U.S.C. § 7491(b)(2)(A); 40 C.F.R. § 51.308(e); and (2) "a long-term . . . strategy for making reasonable progress" toward meeting natural visibility goals.   42 U.S.C. § 7491(b)(2)(B); 40 C.F.R. § 51.308(d).

If EPA finds that a state did not submit a SIP by the applicable deadline – or that it submitted an incomplete plan or a plan that violated the Act – it is required to issue a federal implementation plan, or "FIP," within two years of that determination. 42 U.S.C. § 7410(c)(1)(A)–(B); *see* Mar. 2022 Order at 2.[2]  Section 7604 of the statute provides that a person may bring a civil suit against an agency when there is an "alleged failure of the

---

1      BART is the emission limitation that can be achieved through installation of the "best system of continuous emission reduction for each pollutant" emitted from a stationary facility. 40 C.F.R. § 51.301.

2      "The Administrator [of the Environmental Protection Agency] shall promulgate a Federal implementation plan at any time within 2 years after the Administrator—

  (A)   finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established under subsection (k)(1)(A), or

  (B)   disapproves a State implementation plan submission in whole or in part . . . ."

42 U.S.C. § 7410(c).

Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."[3]  42 U.S.C. § 7604(a)(2).

## BACKGROUND

On August 29, 2011, plaintiffs brought this action against EPA and the EPA Administrator, asking the Court to enforce EPA's obligations under the Act to promulgate "complete, final, and enforceable" plans for states and territories that failed to submit timely plans to mitigate haze in "Class 1" national parks and residence areas.  Compl. [Dkt. # 1] ¶¶ 1–2.

---

3       "The term 'person' includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof."  42 U.S.C. § 7602(e).

There are two scenarios under which a person may bring a citizen suit in a district court to compel EPA to comply with its non-discretionary obligations under the Act.  The first is if EPA fails to act, despite Congress establishing a "date-certain deadline" by which the Agency must perform an action.  *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987).  "In such circumstances, the only question for the district court to answer is whether the agency failed to comply with that that deadline."  *Id.*  The other scenario is when EPA "need not comply with a specific deadline."  *Id.* at 792.  Then, EPA, "if it is under any duty of timeliness, must merely avoid unreasonable delay."  *Id.*  But "this type of duty is discretionary."  *Id.*  Here, because 42 U.S.C. § 7410(c)(1)(A)–(B) imposes a two-year requirement for EPA to issue a FIP after EPA finds that a state did not submit a SIP by the applicable deadline – or finds that it submitted an incomplete plan or a plan that violated the Act – a district court could only consider whether EPA complied with the deadline established in the statute, and not whether EPA avoided unreasonable delay.

On March 30, 2012, the parties entered into a Consent Decree to resolve the plaintiffs' claims that EPA had failed to promulgate the necessary FIPs for thirty-four states, including Texas, Nebraska, and Pennsylvania, within the required statutory timeframe, and that it failed to approve or deny SIPs for nine other states and one region. *See* Partial Consent Decree [Dkt. # 21] ("Consent Decree") at 4; *see also* Compl. ¶¶ 2–4.  The Consent Decree established a timetable for EPA to sign notices of promulgation for (1) a proposed and final regional haze FIP; (2) partial approval of a SIP and promulgation of a partial FIP, or; (3) approval of a SIP, Consent Decree at 5–6, and the case remained pending before this Court for five years, primarily because there was considerable litigation involving the state of Texas.

Ultimately on October 25, 2017, EPA moved to terminate the Consent Decree on the grounds that it had satisfied its final BART requirements.  Defs.' Cross-Mot. to Terminate Partial Consent Decree [Dkt. # 105] at 1.  Plaintiffs opposed the motion and moved separately to enforce the Consent Decree, arguing, among other things, that the Court should retain jurisdiction to oversee the ongoing regulatory processes in Texas, Nebraska, and Pennsylvania.  *See* Pls.' Mot. to Enforce Decree [Dkt. # 103]; Pls.' Reply Mem. in Supp. of Mot. to Enforce Decree and Opp. to Defs.' Cross-Mot. to Terminate Decree [Dkts. # 107, 108] ("Pls.' Reply Mem.").

With respect to the Texas Haze Rule, the Fifth Circuit remanded the rule to the agency and continued the stay, although it did not also vacate the rule.  *See* Order, *Texas v. EPA*, No. 16-60118 (5th Cir. Mar. 22, 2017) at 2 ("[S]ummary vacatur of the Final Rule's SIP disapprovals and FIP provisions based on the legal errors identified . . . is DENIED.").[4]  The Fifth Circuit also required EPA to "file a status report . . . advising th[e] court of the current status until final resolution."

---

4       This order was also submitted as an exhibit and appears on the docket.  *See* Ex. B to Pls.' Suppl. Mem. on Cross Mots. [Dkt. # 145-2].

Mem. to Parties, *Texas v. EPA*, No. 16-60118 (5th Cir. Mar. 22, 2017) at 1; *see Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (opining that if the circuit court had "asserted residual jurisdiction" by remanding the case to EPA to interpret a portion of the statute consistent with the court's construction and by "request[ing] status reports from the parties," the district court might not have subject-matter jurisdiction). Similarly, the Eighth Circuit remanded a portion of the Nebraska Haze Rule, but did not vacate the rule. *See* Order, *Nebraska v. EPA*, No. 12-3084 (8th Cir. Mar. 19, 2015) ("Respondents' motion for an order remanding, without vacatur, a portion of the final action in these consolidated petitions, to allow the EPA to provide a more detailed and complete explanation of its decision is granted.");[5] *see also* Mar. 2022 Order at 10 n.7. However, the Third Circuit remanded *and* vacated the portion of the Pennsylvania Haze Rule that pertained to the source-specific BART analysis. *See Nat'l Parks Conservation Ass'n v. EPA*, 803 F.3d 151, 167 (3d Cir. 2015); *see also* Mar. 2022 Order at 10 n.7.

On March 25, 2022, the Court found that EPA had complied with its obligations with respect to the haze rule requirements under the Consent Decree:

> While it may have taken altogether too long, and plaintiffs' persistence played an essential role in the implementation of the statutory scheme, the Court finds that the agency has finally satisfied its obligations under the Consent Decree when it promulgated the final rules specified in the decree. Therefore, there is nothing left for the Court to enforce, and plaintiffs' motion to enforce the Consent Decree must be denied as moot. The fact that some rules have been remanded or may be remanded in the future does not call for or empower this Court to retain jurisdiction. To do so would insert the district court potentially indefinitely into the proceedings of the circuit courts.

Mar. 2022 Order at 10; *see id.* at 12.

---

5    This order also appears on the docket. *See* Ex. D to Pls.' Suppl. Mem. on Cross Mots. [Dkt. # 145-4].

The Court then terminated the Consent Decree and denied plaintiffs' motion to enforce the

Consent Decree as moot.  Mar. 2022 Order at 12.  At that time, the Court also observed:

> The Court may have jurisdiction if plaintiffs bring a new suit to compel EPA
> to promulgate nondiscretionary rules that were vacated by the circuit court.
> Other courts in this district have found that "[w]hen a [circuit] court vacates
> an agency's rules, the vacatur restores the status quo before the invalid rule
> took effect," and so, the district court "has jurisdiction over the plaintiff's
> challenge to EPA's alleged failure to perform a nondiscretionary duty."
> *Leavitt*, 329 F. Supp. at 64–65 . . . .

*Id.* at 10 n.7 (edits in original).  However, the Court also noted:

> [E]ven if this Court were to adopt the *Leavitt* reasoning, it would not have
> jurisdiction to hear challenges to the Texas or Nebraska rules because they
> were not vacated by an appellate court and therefore, there has been no
> return to the "status quo" that existed prior to their promulgation.  The Court
> may be empowered consistent with *Leavitt* to consider a future claim that
> EPA's failure to replace the vacated portion of the Pennsylvania rule
> violated EPA's nondiscretionary duties, as it is less clear whether the Third
> Circuit retained residual jurisdiction over the matter.  But the Court is of the
> view that the Court of Appeals would likely be the appropriate forum for
> any future oversight.

*Id.* at 11 n.7.

Given that distinction between the opinions issued by the Fifth, Eighth, and Third

Circuits, the Order went into greater detail with respect to Pennsylvania.

> The Third Circuit vacated a portion of the Pennsylvania Haze Rule and
> remanded it to EPA for "further proceedings consistent with [its] Opinion."
> *Nat'l Parks Conservation Ass'n v. EPA*, 803 F.3d 151, 167 (3d Cir. 2015)
> ("In the end, the EPA has identified a host of problems with Pennsylvania's
> BART analysis.  What it has not done, however, is provide a sufficient
> explanation as to why it overlooked these problems and approved
> Pennsylvania's SIP.  Because we, as a reviewing court, need an agency to
> show its work before we can accept its conclusions, we will remand this
> case to the EPA for further consideration.").  The court left many aspects of
> the rule intact, and it did not set a deadline or call for status reports.  For
> that reason, on March 18, 2022, this Court ordered EPA to submit a report
> "informing the Court of EPA's action with respect to the Pennsylvania haze
> rule following the Third Circuit's remand."  Min. Order (Mar. 18, 2022).  In
> its response, the agency stated:  "In June 2020, Pennsylvania submitted to
> EPA a proposed SIP revision to address the Third Circuit's decision.

In April 2021, Pennsylvania withdrew that submission following consultation with EPA. Pennsylvania is currently working on a revised SIP submittal. EPA Region 3 is continuing to work closely with the state and will be prepared to act expeditiously upon submittal." Defs.' Status Report [Dkt. # 146] at 2. In light of the status report, EPA does not appear to be neglecting the matter. And at this point, then, it is not clear whether a situation will arise in which it can be said that EPA "deviate[d] from the mandate of the . . . [c]ircuit, def[ied] a court order or advance[d] an interpretation of the [Clean Air Act] that [the circuit] rejected." *See Leavitt*, 329 F. Supp. 2d at 65. Therefore, while there is a possibility that the Court could determine in the future that it has the power to consider a claim that EPA failed to perform nondiscretionary duties with respect to the vacated portion of the Pennsylvania Haze Rule, that possibility is still a hypothetical one at this time. If EPA acts and plaintiffs are unsatisfied with the outcome, they would have to take those concerns back to the Circuit. In the event EPA fails to take any action whatsoever, and plaintiffs conclude that there is no appropriate means to bring the violation of the mandate to the attention of the Court of Appeals, this Court would then have to decide the question.

Mar. 2022 Order at 12 n.7 (edits in original).

Pending before the Court is plaintiffs' motion to alter the Court's March 25, 2022 Order terminating the case. Pls.' Mot. to Alter or Amend Ct.'s Order of March 25, 2022 [Dkt. # 149] ("Mot. to Alter"). Plaintiffs contend that EPA's obligations under the Consent Decree remained unsatisfied because appellate courts had remanded the rules established for Texas, Nebraska, and Pennsylvania to the agency for further action. Pls.' Suppl. Mem. on Cross Mots. [Dkt. # 145] ("Pls.' Suppl. Mem.") at 1–4; *see also* Pls.' Mot. to Enforce Decree. Relying on *Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004), they argue that the Third Circuit's partial vacatur of the Pennsylvania Haze Rule "restored the status quo" as to the agency's performance of its non-discretionary duty to promulgate a FIP, and that now, it is as though EPA never promulgated a Pennsylvania Haze Rule at all. Mot. to Alter at 1. They also contend that because "[t]he Third Circuit did not retain jurisdiction" to hear challenges to the Pennsylvania Haze Rule,

the continuation of the Consent Decree would not interfere with the Circuit's remand.  *Id.* at 3.[6]

Plaintiffs argue that the Court should also reconsider its ruling terminating the Consent Decree as

to Texas and Nebraska because "EPA has still not approved or promulgated final and effective

haze plans for those states that meet the requirements of EPA's haze rules as required by the

[C]onsent [D]ecree."  *Id.* at 2.

 In opposition, EPA argues that its obligations under the Consent Decree were met upon

signing the notices of proposed and final rulemaking which "trigger[ed] the termination provision

in . . . the [C]onsent [D]ecree."  Defs.' Opp. to Pls.' Mot. to Alter [Dkt. # 152] ("Defs.' Opp.")

at 4; Defs.' Suppl. Mem. [Dkt. # 144] at 8.  It asserts that plaintiffs raised these arguments in their

previous filings and that their attempt to relitigate the issues by filing a motion under Federal Rule

of Civil Procedure 59(e)[7] should be denied.  Defs.' Opp. at 3–4; *see also* Pls.' Surreply on Mot. to

Enforce [Dkt. # 112] at 3 n.1 (arguing that the Third Circuit's "partial vacatur of EPA's

Pennsylvania action restores the situation to the status quo before EPA signed its action when the

agency's duty was unfulfilled"); Pls.' Reply Mem. at 18 n.13; Pls.' Suppl. Mem. at 7 n.13.  EPA

---

6       Plaintiffs urge the Court to state that it was "mistaken in positing that the Third Circuit
likely retained jurisdiction and that keeping the consent decree in place could interfere with that
court's jurisdiction," Pls.' Reply in Supp. of Mot. to Alter or Amend Order [Dkt. # 155] ("Pls.'
Reply in Supp. of Mot. to Alter") at 7; *see* Mot. to Alter at 3–8, and they urge the Court to "amend
its Order to remove the portions of footnote 7 objected to by Plaintiffs above and in their Motion
. . . ."  Pls.' Reply in Supp. of Mot. to Alter at 7.  But plaintiffs have not accurately characterized
the Court's footnote, and footnote 7 of the Order did not posit that it was "likely" that the Third
Circuit had retained jurisdiction.  Indeed, the Court said precisely the opposite and it distinguished
the Pennsylvania opinion from the other two, noting that it was "less clear" that the Third Circuit
had retained residual jurisdiction.  Mar. 2022 Order at 10–12 n.7.  It expressed its view that the
circuit would "likely be the appropriate forum" for future oversight, but that is an unremarkable
prediction since any revised SIP must be appealed to the circuit court, and not this one.  Therefore,
the Court sees no reason to amend its Order as requested.  The Court recognized then, and it still
recognizes, that the non-binding district court opinion in *Leavitt* provides reasoning for why this
Court could exercise jurisdiction in the future if the EPA fails to act in Pennsylvania.  *See id.*

7       "A motion to alter or amend a judgment must be filed no later than 28 days after the entry
of the judgment."  Fed. R. Civ. P. 59(e).

also asserts that the Court's discussion of whether it could determine in the future that it has the power to consider a claim that EPA failed to perform nondiscretionary duties with respect to the vacated portion of the Pennsylvania Haze Rule was "dicta," and was "not part of the core rationale for the Court's decision to terminate" the Consent Decree. Defs.' Opp. at 5. Therefore, the Court need not reconsider its discussion of a potential new suit. *Id.*, citing *Abbs v. Sullivan*, 963 F.2d 918, 925 (7th Cir. 1992) ("Rules 59(e) and 60(b) speak of motions to amend or vacate or modify the court's judgment. Dicta are not judgments."). Further, EPA argues that the Court correctly terminated the Consent Decree as to Texas, because "the 2020 BART Rule remains in effect at this time" and "the courts of appeals are already overseeing EPA's actions as to Texas regional haze." Defs.' Opp. at 8. And as for Nebraska, EPA argues that because "EPA's rule was not vacated when it was partially remanded by the Eighth Circuit[, t]here is thus no basis for the Court to intervene." *Id.* at 8, citing Mar. 2022 Order at 11 n.7.

EPA also argues that the Consent Decree should be treated as a contract: it "required only that EPA sign certain final rules, and EPA indisputably did so." Defs.' Opp. at 4. According to the agency, the Court was correct not to read extra obligations or termination conditions into the Consent Decree. *Id.* at 4, citing *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007) (consent decree interpreted as contract) and *NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985) (plain meaning of contract controls interpretation).

## LEGAL STANDARD

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). "A Rule 59(e) motion is discretionary and need not be

granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

A motion to alter or amend the judgment under Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995). Rather, motions to alter or amend a judgment "are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006), quoting *Indep. Petroleum Ass'n of Am. v. Babbit*, 178 F.R.D. 323, 324 (D.D.C. 1998).

## ANALYSIS

### I.     EPA's obligations to promulgate a FIP under the Clean Air Act are nondiscretionary.

Section 7410(c) imposes a two-year statutory timeframe for EPA to promulgate a FIP after disapproving of a SIP. 42 U.S.C. § 7410(c). "Express deadlines in the CAA typically create nondiscretionary duties to act." *Leavitt*, 329 F. Supp. 2d at 64, citing *Thomas*, 828 F.2d at 790 n.54 (district courts have exclusive "jurisdiction of agency delay claims that involve a nondiscretionary duty of timeliness"). District courts have exclusive jurisdiction over claims that the agency "has failed to perform a nondiscretionary duty." Mar. 2022 Order at 8, citing *Thomas*, 828 F.2d at 794.[8]

---

8       *See also* Consent Decree ¶ 13 ("Nothing in this Consent Decree shall be construed to confer upon the district court jurisdiction to review any final decision made by EPA pursuant to this Consent Decree . . . [or] to review any issues that are within the exclusive jurisdiction of the United States Court of Appeals pursuant to 42 U.S.C. §§ 7607(b)(1) and 7661d.").

Because the Act imposes a statutory timeframe on EPA to promulgate a haze rule, EPA's failure to comply with that schedule would fall within the jurisdiction of the district courts. *See Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005) (finding that SIP approval or disapproval under the Act is a nondiscretionary duty).

## II. EPA has not fulfilled its duty to promulgate a Pennsylvania Haze Rule under the Act.[9]

While EPA did promulgate a timely rule with respect to Pennsylvania, the Third Circuit's partial vacatur renewed EPA's duty to promulgate the rule in accordance with 42 U.S.C. § 7410(c), *Nat'l Parks*, 803 F.3d at 167; *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854–55 (D.C. Cir. 1987) (hereinafter *Dole*), and that duty is presently unfulfilled.

In *Dole*, the D.C. Circuit vacated an agency's approval of a rule that permitted tanker vessels that had been built with the assistance of a federal construction-differential subsidy to undertake domestic operations under a particular set of circumstances. 809 F.2d at 849–50. The D.C. Circuit reasoned that while "the Secretary was well within her statutory authority in promulgating the rule, . . . she failed to provide an adequate account of how the rule serves the objectives set out in the governing statute." *Id.* at 849 (case involving U.S Department of Transportation); *see also Nat'l Parks*, 803 F.3d at 167 ("What [EPA] has not done, however, is provide a sufficient explanation as to why it overlooked these problems [with Pennsylvania's BART analysis] and approved Pennsylvania's SIP. Because we, as a reviewing court, need an agency to show its work before we can accept its conclusions, we will remand this case to the EPA for further consideration."). In its opinion in *Dole*, the D.C. Circuit explained the effect of the vacatur: the conditions returned to the "*status quo ante*, before the . . . rule took effect," so the

---

9       This section will focus only on Pennsylvania, as the haze rules in Texas and Nebraska were not vacated by the circuit courts. *See* Order, *Texas v. EPA*, No. 16-60118 (5th Cir. Mar. 22, 2017) at 2; Order, *Nebraska v. EPA*, No. 12-3084 (8th Cir. Mar. 19, 2015).

agency had to "initiate another rulemaking proceeding if it would seek to confront the problem anew." *Dole*, 809 F.2d at 854–55; *see* Mot. to Alter at 2.

Similarly, in *American Corn Growers Association v. EPA*, 291 F.3d 1, 4 (D.C. Cir. 2002), the D.C. Circuit partially vacated a portion of an EPA rule that pertained to BART requirements, finding that the "BART provisions impermissibly constrain[ed] state authority." *Id.* at 6, 8. The court then remanded the BART rules to EPA. *Id.* at 6. Two years later in *Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004), plaintiffs alleged that "EPA failed to carry out its responsibilities" under the Act to "promulgate regulations that provide guidelines and requirements for [BART]." *Id.* at 59. The district court agreed: it found that the *American Corn* vacatur had "restored the status quo before EPA promulgated those regulations," and that EPA had failed to comply with its nondiscretionary duty within the relevant statutory timeline to "promulgate regulations in accordance with the BART requirement." *Id.* at 64. As a result, the district court found that it had jurisdiction because the Act required the EPA Administrator to promulgate the rule within an express timeframe. *See id.* at 65. EPA's inaction was not an attempt to "deviate from the mandate of the D.C. Circuit, defy a court order or advance an interpretation of the CAA that *American Corn* rejected" – rather, EPA had "done *nothing* with respect to the BART requirement." *Id.* (emphasis in original); *see also* Mot. to Alter at 7.

Here, the Third Circuit vacated "the [Pennsylvania Haze] Rule to the extent it approved Pennsylvania's source-specific BART analysis." *Nat'l Parks*, 803 F.3d at 167. Under the *Dole* framework, because the Third Circuit vacated the rule, it is as though the promulgation of the rule – as required by the Act and the Consent Decree – never occurred. *See Dole*, 809 F.2d at 855; *Leavitt*, 329 F. Supp. 2d at 64 ("[V]acatur of EPA's promulgations relating to the BART Requirement restored the status quo before EPA promulgated those regulations. That status quo

presented a situation wherein EPA had failed to promulgate regulations in accordance with the express deadline . . . despite its nondiscretionary, statutory obligation to do so.").

Further, the Third Circuit did not retain jurisdiction over the promulgation of the Pennsylvania Haze Rule.  It did not mandate that EPA meet a certain deadline by which to promulgate a new rule or file a status report.  *See Leavitt*, 329 F. Supp. 2d at 64–65.  So under the *Leavitt* framework, if EPA were to do "nothing with respect to the BART Requirement," that would not be properly characterized as "attempting to deviate from the mandate of the . . . [c]ircuit," and the Circuit would "retain[] no jurisdiction over the plaintiff's case with which [a district] court's exercise of jurisdiction might interfere."  *Leavitt*, 329 F. Supp. 2d at 65 (emphasis in first quote omitted).

But none of that means that there is something for this Court to do at this time.

### III.    Plaintiffs' motion to enforce the Consent Decree is moot.

Although EPA's duty with respect to the vacated portion of the Pennsylvania Haze Rule is presently unfulfilled, plaintiffs' motion to enforce the Consent Decree remains, as the Court previously found, moot.[10]  Two D.C. district court cases, *Sierra Club v. Johnson*, 374 F. Supp. 2d 30 (D.D.C. 2005), and *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35 (D.D.C. 2014), are

---

[10]    The motion is also moot as to Nebraska and Texas because, as the Court previously explained, the haze rules there were never vacated.  Although plaintiffs argue that the Court "failed to consider relevant factors that militate strongly against termination" of the Consent Decree as to Texas and Nebraska – including that there is "no reasonable progress plan in effect for Texas" and that "the haze plan for Nebraska is deficient," Pls.' Reply in Supp. of Mot. to Alter at 2 – considering these factors would necessarily require the Court to assess the haze plans on the merits, which it is prohibited from doing.  *See* 42 U.S.C. § 7607(b)(1); *id.* § 7607(d)(8) ("The sole forum for challenging procedural determinations made by the Administrator under this subsection shall be in the United States court of appeals for the appropriate circuit . . . .").

instructive as to whether plaintiffs must file a new suit to compel an agency to comply with a nondiscretionary duty.[11]

In *Johnson*, the question before the district court was whether it could enforce EPA's statutory duty to act on state SIPs submissions, or whether the duty was satisfied by the initial approval prior to the D.C. Circuit's vacatur. *See* 374 F. Supp. 2d at 32. The procedural history of the dispute was of particular importance to the ruling.

In 2001, EPA promulgated a rule approving SIPs submitted by Washington, D.C., Maryland, and Virginia in 1997 and 1998. *Id.* at 31. In response to a petition for review of the rule, the D.C. Circuit remanded the rule to EPA. *Id.* In 2002, the Sierra Club and other plaintiffs filed a citizen suit in the district court when EPA did not act in a timely fashion following the remand, and the court issued an order on December 18, 2002 requiring EPA to publish a Federal Register notice no later than February 1, 2003, taking action on the SIP submissions consistent with 42 U.S.C. § 7410(k)(3). *Id.* at 32 ("[I]n Civil Action No. 02-2235, I ordered EPA to publish a final determination . . . .").[12] On April 17, 2003, EPA conditionally approved the states' revised SIPs. *Id.* Following the conditional approval, plaintiffs again petitioned the D.C. Circuit for

---

11      While these cases do not address the enforcement of a consent decree, plaintiffs correctly point out that "a consent decree has the same force and effect as any other judicial order." Pls.' Reply in Supp. of Mot. to Alter at 8, citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) (consent decree is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."). For that reason, the enforcement of the Consent Decree in this case can be assessed under a similar framework to *Johnson* and *McCarthy*.

12      Order, *Sierra Club v. Whitman*, No. 02-cv-2235 (Dec. 18, 2002) [Dkt. # 11] at 2 ("The Administrator shall publish . . . within 45 days of this order, a Federal Register notice, consistent with 42 U.S.C. §§7410(k)(3), containing EPA's proposed approval and disapproval action on the [SIP] submittals for the Washington area . . . and . . . within 120 days of this order, a Federal Register notice, consistent with 42 U.S.C. §7410(k)(3), containing EPA's final approval and disapproval action on such plan submittals.").

review, and the Circuit issued a partial vacatur with respect to the conditional approval and remanded the matter to EPA again.  *Id.*; *Sierra Club v. EPA*, 356 F.3d 296, 298 (D.C. Cir. 2004).

After the vacatur, plaintiffs returned to the district court in 2004, asking the court to enforce its December 18, 2002 order directing EPA to act on the 1997 and 1998 SIP submissions.  374 F. Supp. 2d at 32.  The court denied plaintiffs' motion to enforce the 2002 order because the Circuit's vacatur had "invalidated the substance of one of those actions, but EPA's act of publishing the notices satisfied the terms of the [December 18, 2002 preliminary] injunction."  Order, *Sierra Club v. Whitman*, No. 02-cv-2235 (Aug. 25, 2004); *see* 374 F. Supp. 2d at 32.

In December of 2004, plaintiffs filed a new citizen suit in D.C. district court, seeking an injunction compelling the EPA Administrator to "fulfill his obligation, assigned to him by the Clean Air Act, to take final approval/disapproval action on state implementation plans (SIPs) submitted by Washington, D.C., Maryland, and Virginia."  374 F. Supp. 2d at 30–31; *see* Appl. by Pl. Sierra Club for Prelim. and Permanent Inj., *Sierra Club v. Johnson*, No. 04-cv-2163 (Dec. 15, 2004) [Dkt. # 4].[13]  The court found that "EPA's duty to act is still (or again) unfulfilled, because the Court of Appeals' order vacating EPA's conditional approval of the pre-2001 SIPS . . . operated to restore the status quo ante."  374 F. Supp. 2d at 32–33.  Because the plaintiffs sought injunctive relief through the enforcement of the Act rather than the December 18, 2002 order, the court issued the injunction and ordered EPA to fulfill its obligation under the Act to approve or disapprove the SIPs.  *See id.* at 33.

The court found that EPA's duty to act "ha[d] not been mooted or overtaken" by subsequent state submissions to the agency to revise their SIPs.  *Id.*  Instead, it found that the original

---

13      On February 14, 2005, Stephen L. Johnson was automatically substituted as a defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

submissions from the states were "supplemented, and not superseded, by the [later] submissions." *Id.* Therefore, according to the court in *Johnson*, the "clock for required agency action" was still running despite the vacatur, and since EPA had failed to perform its duty to promulgate a rule by a specific date, an injunction was warranted. *Id.*

The district court in *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35 (D.D.C. 2014), came to a different conclusion with respect to its power to enforce an order that predated the Circuit's vacatur of a rule. *See* Mot. to Alter at 10; Pls.' Reply in Supp. of Mot. to Alter at 8 ("*McCarthy* is particularly relevant because there, as here, the district ordered EPA to perform the duty by a deadline, EPA took action purporting to perform the duty, that action was subsequently vacated by the D.C. Circuit, and the district court thereafter proceeded to enforce its original order.") (emphasis omitted). But that decision was based on different circumstances: the district court emphasized that in its case, the Circuit had specified that its vacatur "*require*[*d*] EPA, *consistent with the district court's deadline order*, to entertain and respond to [Sierra Club's] claims about the necessary scope and stringency of the standards." *McCarthy*, 61 F. Supp. 3d at 40, citing *Sierra Club v. EPA*, 699 F.3d 530, 533 (D.C. Cir. 2012) (emphasis in original).

In *McCarthy*, the district court had issued an order in 2006 requiring EPA to promulgate emissions standards by a certain date pursuant to Section 112 of the Act. 61 F. Supp. 3d at 38. In 2011, EPA issued a "brief determination notice . . . stating that it had fulfilled its duty to promulgate the emission standards required." *Id.* Plaintiffs challenged this determination in the D.C. Circuit. *Id.* The Circuit vacated the determination and remanded to EPA in 2012, finding that EPA did not adhere to notice and comment procedures. *Id.* Plaintiffs then moved to enforce the district court's original order, which predated the vacatur, arguing that EPA's court-ordered duty to promulgate standards remained unfulfilled. *Id.* at 36. The court granted the motion in part

by directing EPA to initiate the process of notice and comment rulemaking, finding that plaintiffs demonstrated that EPA had failed to comply with the 2006 order. *Id.* at 41.

The procedural posture of the case is more analogous to *Johnson* than *McCarthy*. The March 30, 2012 Consent Decree issued by this Court predated the Third Circuit's action. And like the appellate ruling in *Johnson*, the Third Circuit did not condition its partial vacatur upon the enforcement of a previous court order: it simply struck down the rule that EPA had promulgated. This means that there is no basis to revisit the Court's ruling denying plaintiffs' motion to enforce.

Of course, there is still work to be done under the statute. While EPA approved Pennsylvania's BART analysis in accordance with the Consent Decree prior to the partial vacatur, EPA's duty to act under the Act is once again unfulfilled in light of the vacatur. While the Court has been assured that EPA is working closely with Pennsylvania on a revised SIP, EPA's duty to promulgate the final Rule has not been satisfied by Pennsylvania's ongoing submissions. *See Johnson*, 374 F. Supp. 2d at 33; Response to EPA's Status Report of June 17, 2022 [Dkt. # 158]. These circumstances mean that the agency is well beyond the statutory requirement to promulgate a FIP within two years after finding that Pennsylvania failed to timely submit a haze SIP.

But the question raised by the motion to amend the judgment is not whether Pennsylvania has complied with its obligations. The question is whether there is anything this Court can do about that now, and whether there is a pending live controversy over which it can exercise jurisdiction. The Court cannot compel EPA to act on its statutory duty by enforcing the Consent Decree; under the reasoning in *Johnson*, the plaintiffs would need to bring a new action to enforce the Act. While the plaintiffs argue that the Court erred in its reading of *Leavitt* and other precedents, in its Order, the Court did not rule out the possibility that it would have jurisdiction to

hear such a case; it simply found that there was no binding precedent that supported retaining jurisdiction over the Consent Decree and that the original lawsuit had run its course.

Therefore, plaintiffs have not come forward with grounds to amend the order, and the motion to alter the judgment will be **DENIED**.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  August 22, 2022